```
IN THE UNITED STATES DISTRICT COURT
  FOR THE SOUTHERN DISTRICT OF ALABAMA
           SOUTHERN DIVISION
```

```
BOOKER T. HUFF,                      :
                                     :
     Plaintiff,                      :
                                     :
vs.                                  :
                                     :   CIVIL ACTION 14-0041-M
CAROLYN W. COLVIN,                   :
Social Security Commissioner,        :
                                     :
     Defendant.                      :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18).  Oral argument was heard on August 25, 2014.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-three years old, had completed a high school education (Tr. 52), and had previous work experience as an industrial cleaner and a bricklayer helper (Tr. 88). In claiming benefits, Plaintiff alleges disability due to arthropathy, gout, low back pain, pes planus, arthritis of the right hip and left foot, and obesity (Doc. 12 Fact Sheet).

The Plaintiff filed a protective application for SSI on January 20, 2011 (Tr. 29, 176-81). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he was not able to return to his former jobs, Huff was capable of performing specified sedentary work (Tr. 25-37). Plaintiff requested review of the hearing decision (Tr. 20-21) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Huff alleges

2

that: (1) The ALJ did not properly consider the opinions of his treating physician; and (2) the residual functional capacity (hereinafter *RFC)* is not supported by the evidence (Doc. 12). Defendant has responded to—and denies—these claims (Doc. 13). The relevant evidence of record follows.

On April 14, 2011, Dr. Jonathan Campbell examined Huff for complaints of left ankle and right hip pain; though he occasionally had lower back pain, there was none on that day (Tr. 257-61). Plaintiff stated that there was no radiation of the hip pain; the Doctor noted that he had negative straight leg raising, had a steady gait, and walked without assistance. Campbell found severe pes planus on the left, less so on the right; range of motion (hereinafter *ROM*) of the left ankle was severely impaired, though there were no motor or sensory deficits. Campbell specifically noted some mild ROM limitations in the dorsolumbar spine with more moderate limitations in the right hip and left ankle. The Doctor opined that Huff's ability to perform "sitting, standing, walking, lifting, carrying and handling objects, hearing, speaking and traveling [were inadequate] for normal [work] duty" (Tr. 259).

On June 6, 2011, Plaintiff went to the Mobile County Health Department (hereinafter *MCHD*) for complaints of back, hip, and leg pain; Huff rated his pain as five on a ten-point scale (Tr. 262-76). Dr. Mark Pita noted pain with palpation over the

3

lumbar spine; a motor exam demonstrated no dysfunction. An x-ray of the lumbar spine was negative. The assessment was arthropathy and backache; Mobic,[1] Ultram,[2] and Flexeril[3] were prescribed. On July 19, 2011, in a follow-up examination, Huff said that his Mobic and Flexeril had reduced his pain to four-of-ten; it was only a three at that time (Tr. 291; *see generally* Tr. 291-94). Plaintiff had not been taking the Ultram; Dr. Pita noted no dysfunction or abnormalities. On September 1, Huff complained of problems with his left ankle and right hip pain; he had not gotten the prescription for Ultram filled (Tr. 286-91). Plaintiff again rated his pain at three; again, Dr. Pita noted no dysfunction or abnormalities. On October 27, Huff voiced complaints of left ankle and right knee pain at three-of-ten; Pita diagnosed him to have arthropathy and prescribed Naproxen[4] (Tr. 284-86). On January 27, 2012, Plaintiff asserted that his left ankle pain had not improved; he rated it at a

---

[1] **Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis. *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[2] **Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain." *Physician's Desk Reference* 2218 (54th ed. 2000).

[3] **Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[4] **Error! Main Document Only.***Naproxyn* "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain. *Physician's Desk Reference* 2458 (52nd ed. 1998).

4

level three (Tr. 279-84).  An x-ray of the left ankle showed no fracture or bony abnormality; there was no joint effusion or significant soft tissue swelling (Tr. 297).  On February 14, 2012, Huff complained of left ankle and lower back pain, rated as three-of-ten; his back was not hurting on that day (Tr. 277-29).  Pita diagnosed arthropathy and gout.

On March 1, Dr. Pita completed a physical capacities evaluation (hereinafter *PCE*) in which he indicated that Plaintiff was capable of sitting and standing or walking, each, for one hour at a time and up to three hours, each, during an eight-hour day (Tr. 298).  The Doctor found Huff capable of lifting fifty pounds one hour a day, twenty pounds four hours a day, and five pounds for six hours; he could carry twenty-five pounds for two hours, twenty pounds for three hours, ten pounds for four hours, and five pounds for five hours during a workday.  Plaintiff could use his hands for simple grasping, pushing and pulling of arm controls, and fine manipulation; though he could use his right leg/foot for repetitive actions, he could not use his left.  Huff could crawl for one hour, bend and squat for two hours, climb for three hours, and reach for four hours during a workday; he was moderately restricted in working at unprotected heights and being around moving machinery, and mildly limited in driving automotive equipment.  Pita indicated on the form that Plaintiff had lumbago and sciatica that affected his left leg

5

and foot.

On May 3, 2012, Plaintiff was seen at the MCHD for complaints of right hip and left ankle pain; examination notes were not provided (Tr. 299).

On May 24, 2012, Dr. Pita completed a pain form indicating that the pain Huff suffered from gout and carpal tunnel syndrome would keep him from adequately performing daily activities or work; physical activity would greatly increase his pain, distracting him from whatever he was doing (Tr. 300-01). Side effects from his medications would be severe and would limit his effectiveness in performing activities. Pita said that Huff should avoid repetitive wrist and hand motions; Plaintiff was not capable of "gainful employment on a repetitive, competitive and productive basis over an eight hour work day, forty hours a week, without missing more than 2 days of work per month or experiencing frequent interruptions to his work routine" (TR. 301).

On June 12, Orthopod William A. Crotwell, III examined Huff who complained of left foot and ankle pain when walking, rating it as nine on a ten-point scale; he was walking with a cane (Tr. 303-06). The Doctor noted slow movement because of the left foot and limited motion in the right hip; Plaintiff had a severe pronated flat, foot, also described as splayed. Additionally, x-rays demonstrated severe mid-foot arthritis. Right hip

6

arthritis was severe. Crotwell noted that because of "the severe arthritis and limited motion of his right hip and left foot," Huff was limited to sedentary work in which he could alternate sitting and standing, for only six hours a day with a break of one and one-half hours; he could do no medium or excessive walking (Tr. 305). The Orthopod also completed a PCE in which he indicated that Plaintiff could sit, stand, and walk for one hour, each, at a time and sit six, stand two, and walk one hour during an eight-hour day (Tr. 306). Huff could lift ten pounds occasionally and could carry five pounds occasionally; he would have no trouble using his hands, but his left leg could not be used for foot controls. Plaintiff could never bend, squat, crawl, climb, or reach; he was moderately restricted in driving automotive equipment and totally restricted from activities involving unprotected heights, or being around moving machinery. This concludes the medical evidence of record.

Huff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of his physician. Specifically, Plaintiff points to the conclusions of Dr. Mark Pita (Doc. 12, p. 3, 7-9). The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of

any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[5] *see also* 20 C.F.R. § 404.1527 (2013).

In her decision, the ALJ summarized the evidence of record and related what weight she gave it (Tr. 25-37). Specifically, the ALJ found that although Huff had severe impairments, she found that his testimony about the extent of his abilities and limitations was not credible (Tr. 27-28, 30, 31, 34-35); that finding has gone unchallenged. The ALJ also gave little weight to Dr. Pita's evaluation of Plaintiff's abilities, specifically finding as follows:

> Dr. Pita's assessments are inconsistent with each other, with Dr. Pita's own office notes, and inconsistent with objective medical evidence provided by credible medical sources. The restricted use of the upper extremities assessed in the pain report is inconsistent with the lack of restrictions in manipulative function in the upper extremities in the physical capacity evaluation. The impairments cited by Dr. Pita including sciatica and carpal tunnel are also notably absent from corresponding treatment records, despite citing them as underlying cause of the pain and functional deficits alleged. Neither of these underlying conditions was diagnosed by Dr. Pita in corresponding treatment notes, and radiological imaging does not support evidence of sciatica. There are also no

---

[5]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

8

> clinical findings reported in treatment
> records supporting carpal tunnel syndrome.
> The severity of pain assessed by Dr. Pita
> also remains inconsistent with the
> claimant's own reports of the severity of
> his pain in treatment records. The
> assessment is further inconsistent with the
> lack of clinical findings of dysfunction in
> coordination and motor function, despite the
> assessed severity of function limitations.
> Dr. Pita's assessments remain inconsistent
> with his own assessments, objective findings
> from credible medical sources such as Dr.
> Crotwell and Dr. Campbell, and inconsistent
> with the findings and evidence provided in
> Dr. Pita's own office notes. Therefore,
> these assessments were afforded little
> weight based on the lack of consistency with
> the full record.

(Tr. 34). The ALJ's conclusions are directly on point: Dr. Pita's diagnoses of sciatica and carpal tunnel syndrome appear only in his PCE and pain form, finding no mention in his treatment notes; his treatment notes do not support the limitations stated in the PCE and pain forms; and his conclusions are not supported by the other evidence of record.

Huff has argued that Dr. Pita's PCE is more alike than different from the PCE's prepared by the State examiners (Doc. 12, pp. 3-5, 8). The Court notes that Dr. Campbell only examined Plaintiff once and never completed a PCE (*see* Tr. 256-61); the ALJ stated that Campbell's conclusions were persuasive, but, at least in part, unsupported by the evidence (Tr. 31). Though Dr. Crotwell only examined Huff once, he did complete a

PCE that allowed for a full day's work, a significant difference from the PCE completed by Pita (*see* Tr. 306; *cf.* Tr. 298); the ALJ assigned Dr. Crotwell's conclusions significant weight (Tr. 33). Though Dr. Pita's conclusions might have been similar in some respects to the other doctors' conclusions, they are not mirror images.

Though not addressed by the ALJ, the Court notes that Dr. Pita regularly misdiagnosed Huff's obesity when compared with the Body Mass Index (hereinafter *BMI*). For example, on June 6, 2011, Pita noted that Plaintiff was not morbidly obese at seventy-two[6] inches and 293 pounds (Tr. 263); Huff's BMI with these variables is 39 and only barely escapes the morbidly obese classification. *See* http://wuphysicians.wustl.edu/graphics/assets/images/FileUpload/5069image.jpg; *see also* http://www.upstate.edu/community/services/bariatric/am_i_morbidly_obese.php). On July 19, Dr. Pita's notes show that Huff did not appear to be obese, although he weighed two more pounds than the previous reading (Tr. 292); the chart signifies severe obesity. Over the next six months, Dr. Pita continued to find that Plaintiff was not obese, when in fact he was severely obese (*see* Tr. 277, 280, 287). It is difficult to

---

[6]Pita's notes on this date actually find that Huff is only seventy inches tall, but since every other measure listed him to be seventy-two inches (six feet) tall, the Court will make all measurements from that height.

10

place much confidence in a doctor whose opinions on such a basic measurable medical quantity are clearly wrong.

The Court finds substantial evidence to support the ALJ's rejection of Dr. Pita's opinions. Huff's arguments otherwise are without merit.

Huff next claims that the RFC is not supported by the evidence, arguing additionally that he cannot perform sedentary work[7] (Doc. 12, pp. 2-7). The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2013).

In her decision, the ALJ specifically found

> "that the claimant has the residual
> functional capacity to perform sedentary
> work as defined in 20 C.F.R. 416.967(a)
> except the claimant can lift and carry 20
> pounds occasionally and 10 pounds
> frequently. The claimant can stand/walk for
> up to 2 hours for 15 minutes at a time, and
> sit without restriction during an 8-work
> workday. The claimant can occasionally
> climb ramps or stairs, and never climb
> ladders, ropes or scaffolds. The claimant
> can occasionally kneel or crawl. The
> claimant can never be exposed to unprotected
> heights or dangerous moving machinery.

(Tr. 29).

---

[7] **Error! Main Document Only.**"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a) (2013).

11

The Court notes that the ALJ's RFC determination most closely resembles the PCE completed by Dr. Crotwell (*see* Tr. 306). Though the ALJ granted Crotwell's conclusions significant weight, she did not accept everything the Orthopod suggested (Tr. 33). The ALJ explained what she did not accept and why; the Court finds that explanation persuasive and supported by substantial evidence. This claim is of no merit.

Plaintiff has raised two claims in bringing this action. Neither of those claims has merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 26th day of August, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE